RYDER TRUCK RENTAL, INC. *v.* H. D. SUTTON, and Arkansas Bank & Trust

90-77                                                   807 S.W.2d 909

Supreme Court of Arkansas
Opinion delivered April 29, 1991

*Mitchell and Roachell*, by: *Michael W. Mitchell* and *Clayton R. Blackstock*, for appellant.

*Friday, Eldredge & Clark*, by: *William A. Waddell, Jr.*, for appellee H. D. Sutton.

*Wood, Smith, Schnipper & Clay*, by: *Philip M. Clay* for appellee Arkansas Bank & Trust.

W. W. BASSETT, JR., Special Chief Justice. This is the companion case to *H. D. Sutton v. Ryder Truck Rental, Inc.*, 305 Ark. 231, 807 S.W.2d 905 (1991). In order to properly identify and address the issues raised by Ryder on appeal, it is first necessary to delineate the procedural and factual history of the case.

The facts show that Ryder obtained a judgment against Sutton in the amount of $292,042.43. The judgment was filed on September 6, 1989. After the judgment was entered, Sutton filed a motion for new trial. Subsequently, on October 13, 1989, while the motion for new trial was pending, Sutton filed a motion for stay upon appeal. The motion was accompanied by an "indemnity bond" that was signed by Sutton and collateralized by 19.8 acres of industrial property in Garland County.

On October 16, 1989, the trial court denied Sutton's motion for new trial. On October 18, 1989, Ryder filed a response to Sutton's motion for stay. In its response, Ryder claimed that Sutton's indemnity bond did not qualify as a valid "supersedeas bond" because it lacked the signature of a surety. Ryder also argued that even if Sutton's indemnity bond qualified as a valid supersedeas bond, the property pledged by Sutton was insufficient collateral to adequately protect Ryder pending Sutton's appeal.

On November 3, 1989, and again on December 22, 1989, Ryder caused a writ of garnishment to be issued to Arkansas Bank and Trust in Hot Springs ("ABT"). ABT timely answered both writs of garnishment identifying funds it was holding in Sutton's checking account and IRA account. Sutton claimed that the IRA account was exempt from garnishment under Act 428 of 1989. Ryder claimed that this exemption was unconstitutional.

On January 12, 1990, Sutton filed an amended motion for stay and pledged an additional 8.5 acre tract of property in Garland County as collateral for the indemnity bond.

The case came on for hearing before the trial court on January 22, 1990. At that time, the parties mutually agreed to hold in abeyance the issue of whether Sutton's IRA account was

exempt from garnishment. The trial court continued Sutton's motion to claim exemption on the IRA account.

At the hearing, both parties presented testimony regarding the value of the property pledged by Sutton as collateral for the indemnity bond. Sutton's appraiser, Frank Manzer, testified that the 19.8 acre tract of property had a fair market value range from $325,000 to $410,000. Manzer also testified that the 8.5 acre tract of property had a fair market value from $37,900 to $42,600. Sutton testified that he would accept $36,000 for this tract of property.

Ryder's appraiser, Ray Donothan, testified that the value of the 19.8 acre tract of property was $185,000 and the value of the 8.5 acre tract of property was $20,000. Ryder offered additional testimony that "distress sales" in Garland County brought substantially less than the fair market value and that banks in Garland County would generally loan up to 75% of the property value.

The trial court's order was entered on February 9, 1990. At Ryder's request, the order was amended to specifically set forth the trial court's findings of facts and conclusions of law. This amended order was entered on March 8, 1990, some six months after Ryder's judgment was filed. The trial court held that Rule 8 of the Arkansas Rules of Appellate Procedure gave the court discretion as to whether a surety is required for a supersedeas bond. The trial court also concluded that the term "surety", as that term is used in Rule 8, can include property which the court deems sufficient to secure a judgment. The trial court further found that the fair market value of the 19.8 acre tract of property was $325,000 and the fair market value of the 8.5 acre tract of property was $36,000. The trial court held that the fair market value of the two tracts of property pledged by Sutton constituted sufficient collateral for Sutton's indemnity bond to adequately protect Ryder's judgment pending Sutton's appeal. Finally, the trial court "lifted" the garnishment lien placed on Sutton's checking account and IRA account. ABT complied with the court order and released Sutton's funds to him.

Ryder raises three issues on appeal. First, Ryder contends that the trial court erred in approving the indemnity bond as a valid supersedeas bond. Secondly, Ryder contends that its judg-

ment is not adequately secured because the trial court erred in valuing the two tracts of property at their fair market value rather than the amount they were likely to bring at a distress sale. Finally, Ryder contends that the trial court erred in "lifting" Ryder's garnishment lien against Sutton's checking account and IRA account. Ryder seeks to hold ABT liable for the funds that it released to Sutton.

This case principally involves the construction and interpretation of Rule 62 of the Arkansas Rules of Civil Procedure and Rule 8 of the Arkansas Rules of Appellate Procedure. Rule 29(1)(c) of the Rules of the Supreme Court and Court of Appeals vests this court with exclusive jurisdiction to interpret these rules. See *May* v. *Barg*, 276 Ark. 199, 633 S.W.2d 376 (1982); *Aldridge* v. *Watling Ladder Co.*, 275 Ark. 225, 628 S.W.2d 322 (1982). For the reasons set forth below, we affirm the trial court.

The first issue this case presents is whether Sutton's "indemnity bond" qualifies as a valid "supersedeas bond" under A.R.C.P. 62 and A.R.A.P. 8. A.R.C.P. 62 provides for the stay of proceedings to enforce a judgment. Rule 62(d) specifically provides for the stay of such proceedings during the pendency of an appeal. Rule 62(d) provides in pertinent part as follows:

> **Stay On Appeal**. When an appeal is taken, the appellant by giving a supersedeas bond may obtain a stay. . .The bond may be given at or after the time of filing the notice of appeal. After an appeal has been docketed in the Supreme Court, application for leave to file a bond may be made only in such court.

A.R.A.P. 8 also provides for a stay pending appeal and supplements Rule 62(d). Rule 8(c) provides in pertinent part as follows:

> **Supersedeas Bond**. Whenever an appellant entitled thereto desires a stay on appeal, he shall present to the court for its approval a supersedeas bond which shall have such surety or sureties as the court requires. . .

Ryder contends that Sutton's indemnity bond lacks a surety or sureties as required by Rule 8(c) and for that reason does not qualify as a valid supersedeas bond. Ryder maintains that the term "surety" can only mean a person or entity, other than the

judgment debtor, who guarantees payment. In short, Ryder argues that the requirement of a surety or sureties under Rule 8(c) is mandatory and can only be satisfied by a personal or corporate surety, and not by the pledge of property.

A.R.C.P. 62(d) and A.R.A.P. 8 clearly place the responsibility for approval of a supersedeas bond and issuance of a stay order with the trial court or appellate court, depending on the status of the appeal. In this case, Sutton's indemnity bond and application for stay were properly made with the trial court. The trial court approved Sutton's indemnity bond as a valid supersedeas bond and issued a stay order. In doing so, the trial court concluded that the language of Rule 8(c) was discretionary as to the requirement of a surety for a supersedeas bond. The trial court further reasoned that if in the exercise of this discretion it determined that a surety was required, then Rule 8(c) also provided that the trial court could determine the nature and extent of the security necessary to satisfy the surety requirement. The trial court found that the term "surety", as used in Rule 8(c), could include property which the court deemed sufficient to secure a judgment. We too find the language of Rule 8(c) to be discretionary and provided the trial court with sufficient latitude to approve Sutton's indemnity bond as a valid supersedeas bond.

The specific discretionary language found in Rule 8(c) provides that a supersedeas bond "shall have *such* surety or sureties *as the court requires*." [emphasis supplied] The term "such", as used in this rule, connotes a sense of both *kind* and *degree. Webster's New Collegiate Dictionary*, 1163 (8th Ed. 1977). When used properly, it further implies that other similar things exist. George Rose Smith, *A Primer of Opinion Writing, For Four New Judges*, 21 Ark. L. Rev. 197 (1967). The phrase "as the court requires", as used in this rule, clearly gives the court discretion to determine when and to what extent a supersedeas bond must be secured. We conclude that the pledge of property is a *kind* of surety that exists and is provided for under Rule 8(c). Moreover, we believe that the fair market value of the property pledged is security of a sufficient *degree* to adequately protect Ryder's judgment pending Sutton's appeal. We, therefore, find sufficient latitude in the language of Rule 8(c) to accommodate the trial court's interpretation and findings.

■ The purpose or effect of a supersedeas bond is to secure the payment of a judgment following its affirmance on appeal. See *Wilson* v. *King*, 59 Ark. 32, 246 S.W. 18 (1894); see also 4A CJS *Appeal and Error*, subsections 643 & 647. Rule 8(c) affords the court sufficient discretion to marshal security, so long as security remains the ultimate goal. By interpreting the language of Rule 8(c) to permit the filing of a supersedeas bond without surety, or to allow for the term "surety" to include not only the promise of a person, but also the pledge of property, we do not intend or believe that we have diminished the purpose or effect of a supersedeas bond. Instead, we simply recognize that Rule 8(c) authorizes the court to determine on a case-by-case basis the extent to which an appellee's judgment may or may not be in jeopardy and to marshal security of a kind and sufficient degree to secure the payment of the judgment following an affirmance on appeal. Rule 8(c), therefore, provides for methods of security other than a personal or corporate surety bond, and a court in its discretion may consider these alternative methods of security.

Ryder next argues that its judgment is not adequately secured because the trial court erred in fixing the value of the property pledged by Sutton at its fair market value rather than its distress sale value. Ryder does not, however, challenge the trial court's findings as to the dollar amount of the fair market value of the property pledged by Sutton. Instead, Ryder only challenges the *method* that the court used to fix the dollar value of the pledged property. We find that the trial court's method in fixing the value of Sutton's property at its fair market value was proper.

■ Ryder offers no authority that the value of the property should be fixed at its distress sale value and not at its fair market value. Rather, Ryder argues prospectively that if its judgment against Sutton is affirmed on appeal, then it is unlikely that the fair market value of the property will be realized at a public sale. We believe that the fairer method of determining the property's value is in the present, not the future. After considering evidence from both Sutton and Ryder's appraisers, the trial court found that the present fair market value of the property pledged by Sutton was adequate security to protect Ryder pending Sutton's appeal. The fair market method of valuation employed by the trial court has both legislative and judicial precedent. See *Howell* v. *Walker*, 136 Ark. 578, 207 S.W. 41 (1918); *Kirby's Dig.*

§ 1222.

Finally, Ryder maintains that the trial court erred by "lifting" the garnishment lien levied against Sutton's checking account and IRA account with ABT. Ryder argues that its lien attached before the supersedeas order was issued and, since the supersedeas order only had the effect of staying further proceedings to enforce the lien, the trial court did not have authority to "lift" the lien.

■■ Under A.R.C.P. 62(d) and A.R.A.P. 8, the filing of a supersedeas bond and the issuance of a supersedeas order are necessary to stay proceedings to enforce a judgment pending appeal. See *Festinger* v. *Kantor*, 272 Ark. 411, 616 S.W.2d 455 (1981). In *Searcy Steel Co.* v. *Mercantile Bank of Jonesboro, Ark.*, 19 Ark. App. 220, 719 S.W.2d 277 (1986), the Court of Appeals held that a supersedeas order does not have the effect of vacating a judgment, but only stays proceedings to enforce it. The Court of Appeals further stated that if a lien attaches before a supersedeas order becomes effective, then the supersedeas order only has the effect of prohibiting further proceedings to enforce the lien. *Searcy Steel*, 19 Ark. App. at 226. While we agree with this view, we find that a supersedeas order should relate back to the filing of a valid supersedeas bond and, therefore, becomes effective at the time of the filing of a valid supersedeas bond.

■ In the case at bar, the supersedeas bond was filed on October 13, 1989. The writs of garnishment were not issued until November 3, 1989 and December 22, 1989. The supersedeas order was filed on February 9, 1990 and amended on March 8, 1990. The supersedeas order related back to the filing of the supersedeas bond on October 13, 1989, which was prior to Ryder having its writs of garnishment issued. Hence, at the time the writs of garnishment were issued, a retroactive stay was in effect. Consequently, the garnishment lien was not valid. In our view, we need not determine whether the trial court had the authority to "lift" Ryder's garnishment lien, since it never attached.

A.R.C.P. 62 and A.R.A.P. 8 clearly envision that an appellant may obtain a continuous and uninterrupted stay of any proceedings to enforce a judgment from the date of the entry of the judgment until the final disposition of the case on appeal. Rule 62(a) provides for an automatic stay during the ten days

immediately following the entry of a judgment. Rule 62(b) allows the court to stay an execution or other enforcement proceedings during the pendency of post-judgment motions. Rule 62(d) and A.R.A.P. 8 provide for a stay during the pendency of an appeal. To obtain a stay on appeal, these rules require that an appellant file a valid supersedeas bond and obtain a supersedeas order. In many instances, the filing of the supersedeas bond and obtaining of the supersedeas order cannot be done simultaneously. If a supersedeas order does not relate back to the filing of a supersedeas bond, then the stay is interrupted. We believe that such an interruption presents an unnecessary problem and opens the door for potential mischief. For example, suppose JC (judgment creditor) obtains a judgment against JD (judgment debtor). JD files an application for stay and supersedeas bond on Monday, but cannot obtain a corresponding supersedeas order on Monday because the Judge has gone fishing till Friday. JD does obtain an ex parte supersedeas order on Friday. JC recognizes that the Judge's unavailability provides him with a window of opportunity to place a garnishment lien on JD's bank account. JC garnishes the bank account on Wednesday before the supersedeas order is obtained. If the supersedeas order becomes effective on Friday, then JC's lien has attached, and since the supersedeas order only has the effect of staying enforcement of the garnishment lien, then the garnishment lien remains in place for the duration of JD's appeal. Despite the fact that JD has acted in a reasonable and timely manner, JD now finds a garnishment lien placed on his bank account and the funds "frozen" while his case is pending on appeal. We do not believe A.R.C.P. 62(d) and A.R.A.P. 8 intended or should permit this infelicitous result. To eliminate this possibility, we believe the better view is that a supersedeas order relates back to the filing of a *valid* supersedeas bond and retroactively effects a stay during the period of time between the filing of the supersedeas bond and the filing of the supersedeas order.

We do not believe that our decision in this case is in direct conflict with the Court of Appeals' decision in *Searcy Steel*, *supra*. In *Searcy Steel*, the garnishment lien attached prior to the filing of the supersedeas bond. Since the lien had attached before the supersedeas bond was issued, the supersedeas order and supersedeas bond only had the effect of staying proceedings to

enforce the lien. Hence, we believe that our decision in the case at bar is consistent with the Court of Appeals' decision in *Searcy Steel*. We have, however, to some extent clarified that decision here by finding that a supersedeas order relates back in time to the filing of a *valid* supersedeas bond and effects a retroactive stay from the time of the filing of the valid supersedeas bond.

Having determined that Sutton's indemnity bond qualified as a valid supersedeas bond and preceded in time Ryder's writs of garnishment, we find that the supersedeas order related back to the filing of Sutton's supersedeas bond and Ryder's garnishment lien never attached. We, therefore, find no liability on the part of the garnishee appellee, Arkansas Bank and Trust.

HOLT, Chief Justice, not participating.