**In re Donnell R. GORDON.**

**Bankruptcy No. 92–41902S.**

United States Bankruptcy Court,
E.D. Arkansas, W.D.

Nov. 26, 1993.

---

Bere Church, Little Rock, AR, for First Commercial Mortg. Co.

Richard Orintas, Little Rock, AR, for debtor.

A.L. Tenney, Little Rock, AR, Chapter 13 Trustee.

## ORDER GRANTING RELIEF FROM STAY

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the Motion for Relief from Stay filed by First Commercial Mortgage Company on September 27, 1993. The matter was called for trial on October 5, 1993, at which time the parties stipulated to the facts and requested that they be permitted to brief the issues. The debtor, represented by Richard J. Orintas, submitted his brief on October 14, 1993; the creditor, represented by Bere Church, filed its response on October 25, 1993.

The debtor executed a mortgage on May 30, 1989, in favor of First Commercial Mortgage Company ("First Commercial"). In May 1993, the mortgage being in default, First Commercial instituted foreclosure proceedings. The foreclosure action proceeded to judgment and sale, held on August 12, 1993, at which time First Commercial purchased the residential real property. On August 13, 1993, the Circuit Court issued an order confirming the sale and a Commissioner's Deed was delivered to First Commercial. A writ of assistance was issued on August 26, 1993. This bankruptcy proceeding was instituted by the filing of a skeleton petition on September 9, 1993; the schedules were filed on September 17, 1993.

First Commercial filed this contested matter on September 27, 1993, requesting relief from the automatic stay in bankruptcy, 11 U.S.C. § 362, to remove the personal belongings of the debtor from the residence. The debtor responded on October 12, 1993, asserting that relief from stay was not appropriate because he is entitled to cure the arrearage on the mortgage pursuant to section 1322(b)(5). In addition, the response contained a request for turnover of the real property.[1] First Commercial argues that since title to the real property was transferred prior to the filing of the petition in bankruptcy, the residence is not property of the estate.

■ Section 1322(b) permits cure of defaults as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or

---

1. Although the Court advised the debtor in open court that cross-claims on motions for relief from stay are inappropriate, no complaint for turnover has been filed pursuant to the Rules of Part VII, Federal Rules of Bankruptcy Procedure. Accordingly, to the extent the debtor seeks affirmative relief in the form of a turnover order, that the request is stricken from the response filed October 12, 1993.

of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; * * *

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(2), (b)(5). Thus, a debtor whose mortgage is in default may cure the arrearage over the life of the plan, and thereby maintain the mortgage. The application of the statute is ambiguous in that the term "default" is not defined. It is unclear whether default includes the situations in which a judgment of foreclosure is entered, in which a sale has occurred, in which a sale has been confirmed, or in which the debtor's state-law redemption rights have expired.

The debtor asserts that he may cure the arrearage since the redemption period has not yet expired.[2] Under debtor's theory, property of the estate includes the right to redeem the property such that the debtor must be permitted to redeem the property.[3] The Eighth Circuit has addressed this issue in the Chapter 12 context. *See Justice v. Valley National Bank,* 849 F.2d 1078 (8th Cir.1988). Each of the circuit court cases to address this issue have ruled that the right to cure a default under section 1322(b)(5) terminates with sale of the property. *See In re Thompson,* 894 F.2d 1227 (10th Cir.1990); *Matter of Tynan,* 773 F.2d 177 (7th Cir. 1985); *In re Glenn,* 760 F.2d 1428 (6th Cir. 1985), *cert. denied sub nom,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *see also In re Roach,* 824 F.2d 1370 (3d Cir.1987)

(cure provision expires upon entry of foreclosure judgment).

In the Chapter 12 context, the Eighth Circuit concluded that the right to cure a default terminates after the foreclosure sale:

> Because a foreclosure sale extinguishes the mortgage contract and works a substantial change in the relationship of the parties under state law, we hold that the provisions of Chapter 12 relating to the debtor's power to cure defaults and modify the rights of secured creditors are not applicable after a foreclosure sale has been held.

*Justice v. Valley National Bank,* 849 F.2d 1078, 1080 (8th Cir.1988). The holding and analysis of *Justice* is applicable to this proceeding. *See Justice,* 849 F.2d at 1086 ("We are therefore reluctant to dismiss the unanimous opinion of the circuit courts that no federal interest served by Chapter 13 justifies allowing a debtor to cure default after a foreclosure sale ... In this regard, the distinction between sections 1222(b)(2) and 1322(b)(2) is not material.").

 Under the *Justice* analysis, the cure provision of section 1322(b) is not applicable after the contractual mortgage relationship between the debtor and the mortgagee terminates pursuant to state law.[4] Under Arkansas law, if the purchase price at a foreclosure sale is less than the amount of the judgment debt, the mortgagor may remain liable for the deficiency, Ark.Stat. 18–49–103(c), and "an execution may be issued against the defendant as on ordinary judgments." Ark.Stat. § 18–49–105. Thus, like the analysis in *Justice* under South Dakota law, a real estate mortgage is extinguished after *both* the foreclosure of the mortgage and the sale of the mortgaged property. *See*

**2.** The cases cited by debtor address cure of defaults prior to sales or transfers of title and thus have no application to the instant case in which a sale was confirmed and title transferred. *In re Terry,* 780 F.2d 894 (11th Cir.1985); *In·re Attinello,* 38 B.R. 609 (Bankr.E.D.Pa.1984) (tractor repossessed; sale noticed); *In re Hardin,* 16 B.R. 810 (Bankr.N.D.Tex.1982) (judgment entered, but sale not held).

**3.** The problem with this argument is that the right to redeem the property under state law is not the equivalent of curing the default. The estate's interest would be only the state law right of redemption, which, under Arkansas law, requires a lump-sum payment.

**4.** *Justice* was decided under South Dakota law which provides for termination of the contractual mortgage relationship after both the foreclosure

*Justice,* 849 F.2d at 1084.[5] Since sale of the property occurred, the contractual relationship between debtor and First Commercial terminated such that there is no right to cure a default under section 1322(b). Debtor is in error when he asserts that the right to redeem the property permits cure of the default.

 Since debtor has only the redemption rights granted by state law, *see Justice* at 1084, 1085, the Court must determine what those rights may be. Under Arkansas law, there exists a one-year statutory right to redemption. Ark.Stat. § 18–49–106. The right to redemption may be waived in the mortgage or deed of trust. *Id.* Indeed, it is the "usual" procedure for mortgagor to waive the right to redemption. *Fleming v. Southland Life Ins. Co.,* 263 Ark. 272, 564 S.W.2d 216, 217 (1978). While the parties have not submitted the mortgage documents which would indicate whether debtor made such a waiver, the stipulated facts compel the conclusion that a waiver of the right to redemption occurred. The parties stipulated that the foreclosure sale was confirmed by the Court. Under Arkansas law, the judicial sale was not complete until confirmation of the sale. *Id.* at 218. After confirmation of the sale, the possibility of redemption ceased to exist. *See Fleming v. Southland Life Ins. Co.,* 263 Ark. 272, 564 S.W.2d 216 (1978). Since a confirmation of the sale was issued by the court, either the debtor waived his right to redeem the property or the statutory redemption period expired.

In the instant case, there is no evidence before the Court that the debtor has any redemption rights. Although debtor argues that Arkansas statutes provide for a one-year redemption period, there is no evidence that debtor holds such a right. The only evidence before the Court is that debtor either waived his statutory redemption rights or the rights otherwise expired. Under Arkansas law, upon confirmation of the sale and issuance of the deed to First Commercial, the debtor had no interest in the property. The

purchaser had the right to gain possession of the residence. Since the debtor has no interest in the property, First Commercial is entitled to relief from stay to remove the property of the debtor from its premises. 11 U.S.C. § 362(d).

**ORDERED** as follows:

1. The "Cross–Motion of Debtor," contained in the "Response to Motion for Relief from Stay" is hereby stricken as an improper pleading.

2. The Motion for Relief from Stay, filed by First Commercial Mortgage Company on September 27, 1993, is GRANTED.

**IT IS SO ORDERED.**

---

of the mortgage and the sale of the mortgaged property.

**5.** The Court does not address the situation in which a deficiency judgment is neither sought nor entered by the state court.